UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | |
|---|---|
| v. | No. 1:21-CR-10082-PBS |
| KEVIN NEWMAN, | |
| Defendant | |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully submits this memorandum in support of its sentencing recommendation for the Defendant Kevin Newman ("Defendant" or "Newman") for twenty-four months incarceration, supervised release for one year, a fine within the guideline range and a special assessment of $100 and restitution to the Internal Revenue Service ("IRS") in the amount of $572,843. Such a sentence is warranted based upon the seriousness of Defendant's tax crimes, his history and characteristics, and the need to avoid sentencing disparities between such a white-collar defendant and others in the criminal justice system. In tax cases such as this one, involving business owners who simply choose to cheat their fellow taxpayers rather than pay their fair share of taxes, a sentence of incarceration is both merited and critical to send an appropriate message to those tempted to get ahead by stealing from the taxpayers. It is also necessary to make clear that business-owners, like others who violate federal criminal laws, will be held accountable and are not exempt from jail time.

Newman was a successful businessman, the owner of his own landscape and patio construction company. He earned a good income from that business. He has a comfortable lifestyle with a home in Newton and a second-home, mortgage free, worth about $1.5 million in Martha's Vineyard. In addition, he holds other real estate properties, retirement accounts and

other assets. But he did not want to pay his share so he cheated on his taxes and simply did not report much of his income from his business.

The fact that someone has a loving family, or has supported charities in their lifetime, is not a basis to avoid jail time for such an extensive pattern of tax fraud. People who sell drugs for profit are sentenced to significant jail sentences in this country every day – whether or not they had the means to support charities or are loved by their friends and family. To avoid two systems of justice, it is critical that privileged and affluent persons with no excuse who chose to violate the law and cheat on their obligations be sent to jail – for a significant period of time. Nothing else will send the appropriate message to those who would rather keep their millions than pay their fair share to support the critical government services from which we all benefit.

I.      GUIDELINES CALCULATION

For a period of at least nine years, Newman willfully underreported more than a million dollars in income and inflated expenses on his corporate tax returns filed by his business, Kevin Newman Landscape and Tree, Inc. ("KNLT"). He also underreported these earnings on his personal tax returns. In total, he failed to pay taxes due of $671,812, including federal ($572,843) and state ($98,969) taxes.

Defendant now objects to the inclusion of $98,969 in state tax liability in the loss calculation. The Sentencing Guidelines and controlling case law make clear that tax loss for Guidelines purposes is not limited to the tax loss charged or proven at trial, but includes the tax losses resulting from the relevant pattern of conduct, which includes uncharged conduct that was part of the same scheme. *See* USSG § 2T1.1 comment, (n.2) ("In determining the total tax loss attributable to the offense (see § 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."). Application Note 2 to USSG § 2T1.1 also

specifically lists as examples of conduct that should be treated as part of the same course of conduct or common scheme or plan including "(A) there is a continuing pattern of violations of the tax laws by the defendant; (B) the defendant uses a consistent method to evade or camouflage income …; (C) the violations involve the same or a related series of transactions; and (D) the violation in each instance involves a failure to report or an understatement of a specific source of income e.g., … income from a particular business activity." *Id.*

Relevant conduct thus includes all tax losses flowing from the pattern of conduct – here, the pattern of improper adjustments to lower G&B income. *See United States v. McElroy*, 587 F.3d 73, 87-88 (1st Cir. 2009) (including unpaid state taxes in total tax loss under USSG 2§ T1.1). The inclusion of this amount does not change the Guideline calculation, however, because in either event the loss is more than $550,000 and less than $1,500,000.

Thus, the parties agree that Defendant's total "offense level" under the Guidelines is 17 (24-30 months). This was calculated as follows:

a) Defendant's base offense level is 18, because the tax loss is more than $550,000 but less than $1,500,000 (USSG §2T4.1(H)); and

b) Defendant's offense level is decreased by 3, because Defendant has accepted responsibility for Defendant's crimes (USSG § 3E1.1).

II. APPLICATION OF GUIDELINES AND SECTION 3553(a) FACTORS

The Guidelines "serve as the starting point for the district court's decision and anchor the court's discretion in selecting an appropriate sentence." *United States v. Molina-Martinez*, 136 S. Ct. 1338, 1349 (2016). Once the sentencing court has established the Guidelines Sentencing Range (including a consideration of any applicable departures), it must then evaluate the sentencing factors set out in 18 U.S.C. § 3553(a). *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006). The goal is to fashion "a sentence sufficient, but not greater than

3

necessary," for the achievement of the legitimate objectives of sentencing. 18 U.S.C. § 3553(a); *Dixon*, 449 F.3d at 204. In this case, the 3553(a) factors also support the significant sentence recommended by the Guidelines here, and the government's recommendation of a sentence at the bottom of the Guidelines range.

    A.  <u>Nature, Circumstances, and Seriousness of the Offenses</u>

Defendant's crimes are serious and significant. The defendant was a successful business owner but determined to hide his income rather than pay taxes. He carried on this conduct for nearly a decade. He failed to report more than a million dollars in income. When a person of such privilege refuses to pay their share of taxes for so long for no reason other than to have more money, a sentence of incarceration such as the two years recommended here is merited and appropriate.

    B.  <u>History and Characteristics of the Defendant</u>

The defendant's history offers no significant mitigating circumstances. He had no reported addiction or other need for the funds. He did not need to steal from the taxpayers. He simply chose to do so. There is nothing in his history or characteristics that supports any downward variance from the guideline sentence here.

    C.  <u>Need to Promote Respect for the Law and Just Punishment</u>

The criminal tax laws are designed to protect the integrity of the nation's tax system, which is dependent upon a system of voluntary compliance. The tax laws of our country, in effect, reflect an honor system under which citizens are required to cooperate with the government. It is vital that when a citizen is non-compliant, that citizen is appropriately punished. *See United States v. Zukerman,* 897 F.3d 423, 427 (2d Cir. 2018) (explaining that "'tax crimes represent an especially damaging category of criminal offenses,' which 'strike at the foundation of functioning government'") (citations omitted).

Failure to sentence Newman, a successful businessman who committed tax crimes for multiple years, to a significant term of incarceration would send the wrong message – the message "that would-be white-collar criminals stand to lose little more than a portion of their ill- gotten gains and practically none of their liberty." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006). It is important both to "the deterrence of white-collar crime (of central concern to Congress)", and "the minimization of discrepancies between white- and blue-collar offenses, and limits on the ability of those with money or earning potential to buy their way out of jail." *United States v. Mueffelman*, 470 F.3d 33, 40 (1st Cir. 2006) (cited and quoted with approval in *United States v. Levinson*, 543 F.3d 190, 197 (3d Cir. 2008) (noting that "probationary sentences for white-collar crime raise concerns of sentencing disparities according to socio-economic class."). *See also United States v. Sample*, 901 F.3d 1196, 1198-1201 (10th Cir. 2018) (vacating sentence for white-collar defendant sentenced to probation to allow him to work and repay victims as impermissibly sentencing based on the defendant's income); *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) ("The Sentencing Guidelines authorize no special sentencing discounts on account of economic or social status."); *United States v. Prosperi*, 686 F.3d 32, 47 (1st Cir. 2012) ("[I]t is impermissible for a court to impose a lighter sentence on white-collar defendants than on blue-collar defendants because it reasons that white-collar offenders suffer greater reputational harm or have more to lose by conviction."); *United States v. Stall*, 581 F.3d 276, 286 (6th Cir. 2009) ("We do not believe criminals with privileged backgrounds are more entitled to leniency than those who have nothing left to lose."); *United States v. Ture*, 450 F.3d 352, 359 (8th Cir. 2006) (explaining that deciding against imprisonment because a defendant "owes a substantial amount of back taxes, interest, and penalties . . . is entirely improper and . . . results in bad public policy"); *United*

*States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) ("Business criminals are not to be treated more leniently than members of the 'criminal class' just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity."). *Cf.* 28 U.S.C. § 994(d)(11) (requiring that the Commission "shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders").

The fact that a person owns a business, earns an income or supports a charity cannot be permitted to preclude them from serving a sentence of incarceration. To do otherwise would be to create two systems of justice – one for the privileged business owners and another for those without such means and opportunity. To the contrary – tax crimes are committed by those who have incomes and frequently those who own businesses and are in a position to support charities as well as their families and their affluent lifestyles. Not sending such tax cheats to jail would be simply an invitation to those in a position to commit significant tax crimes to do so with impunity. It would signal that even after ten years of enjoying the fruits of their crimes, they can avoid jail time based upon their status as business owners, their family connections or other factors associated with such a position in life.

D. <u>Need to Afford Adequate Deterrence</u>

The Sentencing Guidelines provide that deterrence should be the primary consideration when sentencing defendants for tax crimes. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is of the utmost importance when punishing criminal tax violations. USSG § 2T1, introductory cmt. (2016). Here, the Defendant's willful refusal to pay his fair share, along with his continued conduct, demonstrate that both specific and general deterrence

6

are necessary.

General deterrence through serious sentences for criminal tax fraud is an essential means of minimizing the ever-increasing amount of money estimated to be lost each year through tax fraud. As of 2019, the IRS's study of tax compliance estimates that only about 84% of individuals are compliant, leaving a gross yearly tax gap of over $441 billion dollars in unreported and uncollected taxes. *See* "Tax Gap Estimates for Tax Years 2011-2013." https://www.irs.gov/pub/irs-pdf/p1415.pdf at 1, 19. The Department of the Treasury more recently estimated that the gross tax gap has risen to $630 billion in 2019. https://home.treasury.gov/system/files/136/The-American-Families-Plan-Tax-Compliance-Agenda.pdf#page=5. Thus, hundreds of billions of dollars are lost annually because people like Newman – who otherwise take full advantage of what this country offers – shirk their responsibilities as American taxpayers.

Widespread noncompliance with the tax laws is thus an important consideration when sentencing for tax offenses. Meaningful sentences that through their terms speak loudly are necessary to deter such conduct. Absent such deterrence, others with the means and opportunity to enrich themselves at the cost of other taxpayers will cynically conclude that the potential rewards of such criminal activity outweigh the risks of being caught and punished. The sentence in this case should send a clear message to would-be tax cheats that a significant term of imprisonment is a reality for willful tax fraud. The sentence should also assure law-abiding taxpayers that they are not foolish for paying their fair share of taxes.

Our tax system depends on the voluntary compliance of honest taxpayers. A serious sentence of imprisonment promotes voluntary compliance by making clear that there are consequences for hiding income from the government. Sentencing Newman to a significant

term of incarceration recommended here will convey the message to others that systematic and repeated efforts to cheat on one's taxes will be met with strong punishment. Such a sentence will make clear that the criminal law punishes equally those with privilege as it does those without.

  E. <u>The Need to Avoid Unwarranted Sentence Disparities Among Defendants Guilty of Similar Conduct</u>

The legislative history of the Sentencing Reform Act of 1984, which created the United States Sentencing Commission, made clear that one of the Act's goals was to rectify the serious problem in the criminal justice system that white-collar offenders were not being adequately punished. *See* S. Rep. No. 98-225, at 77 (1983) ("[S]ome major offenders, particularly white-collar offenders . . . frequently do not receive sentences that reflect the seriousness of their offenses."). Then-Judge Breyer, an original member of the Sentencing Commission, explained:

> The Commission found in its data significant discrepancies between pre-Guideline punishment of certain white-collar crimes, such as fraud, and other similar common law crimes, such as theft. The Commission's statistics indicated that where white collar fraud was involved, courts granted probation to offenders more frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation. To mitigate the inequities of these discrepancies, the Commission decided to require short but certain terms of confinement for many white collar offenders, including tax, insider trading, and antitrust offenders, who previously would have likely received only probation.

*See* Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 20-21 (1988).

In considering the issue of unwarranted disparities in sentences, the Court should consider the need to avoid sentencing disparities between this crime and other crimes motivated by the desire to obtain money –not just disparities between this tax fraud and other frauds, but also disparities between this crime and drug crimes, for instance. The need to avoid disparities between such crimes and the gulf between white collar sentences and non-white collar sentences

8

calls strongly for a serious sentence here where a business owner chose for many years to deliberately flout the law and cheat his fellow-taxpayers. Accordingly, this Court and others in this district have repeatedly sentenced such tax cheats to jail time, even in cases with much lower tax losses. *See, e.g.*, *United States v. Haddad*, 20-CR-40024-TSH (eight months incarceration for tax fraud with loss of approximately $292,000); *United States v. Harry Richard*, 18-CR-10073-NMG) (1 year and 1 day of incarceration for tax fraud by roofing business owner with restitution of $353,246); *United States v. George Fenzel*, 14-CR-40005-THS (sixteen months incarceration for dentist who concealed his income after downward departure due to cooperation, restitution of $157,407); *United States v. Carey*, 16-CR-10354-ADB (18 months incarceration for accountant who failed to report income with tax loss of $355,535); *United States v. Bonefant*, 15-CR-10204-PBS (15 months incarceration for bankruptcy fraud and tax fraud with loss of approximately $389,000); *United States v. Nicholas Koudanis*, 15-CR-10387-PBS (two years incarceration for tax evasion with tax loss of approximately $2 million).

To put the defendant's crimes in further context, according to the IRS Tax Statistics, the average sentence for a corporate fraud tax scheme nationally in 2020 was 21 months. https://www.irs.gov/pub/irs-pdf/p3583.pdf, Appendix at p. 67. According to Sentencing Commission Statistics for 2019, the median loss in tax cases was $339,071 and the average sentence was 16 months. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Tax_Fraud_FY20.pdf. Newman's tax loss of $671,812 is thus well above the average for 2019 and his recommended sentence of 24 months is only eight months above the average sentence for such offenses with lower losses. The requested sentence is thus consistent with sentences for other similar tax offenders and an appropriate, reasonable sentence for a serious multi-year tax crime by this business owner.

CONCLUSION

Defendant made a deliberate choice to take advantage of the federal tax system for personal profit at the expense of the United States and other honest taxpayers. The Government respectfully submits that the recommended sentence is appropriate to appropriately punish and deter such conduct.

                              Respectfully submitted,

                              NATHANIEL R. MENDELL
                              Acting United States Attorney

        By:     */s/ Sara Miron Bloom*
                  SARA MIRON BLOOM
                  Assistant United States Attorney
                  John Joseph Moakley United States Courthouse
                  1 Courthouse Way, Suite 9200
                  Boston, MA 02210
                  (617) 748-3265

Dated: July 28, 2021

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF.

                              */s/ Sara Miron Bloom*
                              Sara Miron Bloom
                              Assistant United States Attorney

Date: July 28, 2021